LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com
　　　　 lglancy@glancylaw.com
　　　　 mmgoldberg@glancylaw.com
　　　　 rprongay@glancylaw.com

**POMERANTZ GROSSMAN HUFFORD
　　 DAHSLTROM & GROSS LLP**
Jeremy A. Lieberman
Matthew L. Tuccillo
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

*Attorneys for Plaintiff*

*[Additional Counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE MARRIOTT, On Behalf Of Itself And All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>FUSION-IO, INC., DAVID A. FLYNN, SHANE V. ROBISON, and DENNIS P. WOLF,<br><br>　　　　　　　　　　　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Mike Marriot ("Plaintiff"), by and through his counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Fusion-io, Inc. ("Fusion-io" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst reports concerning Fusion-io; and (d) other public information regarding the Company.

## I.   **INTRODUCTION**

1.      This is a federal securities class action brought on behalf of purchasers of Fusion-io's publicly traded common stock between August 10, 2012 and October 23, 2013, inclusive (the "Class Period"). The claims asserted herein are alleged against Fusion-io and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Fusion-io is a computer hardware and software systems company that designs and manufactures memory storage solutions using flash memory technology. Flash memory, a type of solid state memory, is traditionally used in small-scale applications such as mobile devices and portable "flash drives." Fusion-io's integrated hardware and software solutions, however, allow the Company's customers to utilize flash memory technology in large-scale data centers.

3.      Since the Company's initial public offering in 2011, a limited number of what the Company calls "strategic" customers, including Facebook, Inc. ("Facebook") and Apple, Inc. ("Apple"), have accounted for a significant portion of the Company's revenues. Fusion-io's reliance on these strategic customers presented a material risk to the Company's ability to generate sales. In particular, revenue from Facebook and Apple were of critical importance to investors.

4.      During the Class Period, Defendants misrepresented to investors that the Company was a market leader in large-scale flash memory applications and was not facing any competitive pressure or risk from the commoditization of flash memory products. Defendants also issued unrealistically positive revenue guidance and misrepresented that the Company was able to anticipate the demand from its strategic customers based on its years of experience as their flash memory supplier. As a result of these misrepresentations, Fusion-io stock traded at artificially inflated prices during the Class Period.

5.      On January 30, 2013, Fusion-io shocked investors when it announced that it no longer anticipated achieving its previously issued revenue guidance for fiscal year 2013.[1] Although investors were dismayed by the Company's announcement, Defendants propped up the price of Fusion-io stock by misrepresenting the reason for the change in guidance as a temporary two-quarter shift in the timing of purchases from Facebook and Apple. Over the next several months, Defendants continued to assure investors that the Company was not experiencing any significant competitive pressure. Defendants also expressed confidence that after the two-quarter timing shift, the Company's strategic customers would return to Fusion-io, and not a competitor, to meet their flash memory needs.

6.      It was not until October 23, 2013, after the two quarters had passed and Fusion-io announced results from its first quarter of fiscal year 2014, that investors learned the truth. That day, the Company revoked its prior revenue guidance and announced that its expected gross margin in 2014 would fall significantly. The Company also announced that Chief Financial Officer ("CFO") Dennis Wolf and Chief Sales Officer James Dawson were leaving the Company. Following these disclosures, stock analysts commented that lower revenue growth and falling margins could only mean that the competitive pressures facing Fusion-io were more significant than the Company had represented.

7.      This disclosure caused the price of Fusion-io stock to decline from $12.98 per share to $9.82 per share, or 24%, damaging Plaintiff and the Class.

## II.   JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Fusion-io maintains a "Silicon Valley Office" and conducts business in this District, and many of the acts and conduct that constitute the violations of law complained of herein occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   PARTIES

10.     Plaintiff purchased shares of Fusion-io stock on the New York Stock Exchange during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

11.     Defendant Fusion-io, a Delaware corporation, was founded in 2005 as Canvas Technologies, Inc. Fusion-io is a computer hardware and software systems company that designs and manufactures products using flash memory technology. Fusion-io maintains a "Silicon Valley Office" and conducts business in this District at 2880 Junction Avenue, San Jose, California. The Company's common stock trades on the New York Stock Exchange, which is an efficient market, under ticker symbol "FIO." Fusion-io currently has approximately 100 million shares of common stock outstanding.

---

[1] Fusion-io's fiscal year end is June 30 and its fiscal quarters end on September 30, December 31, March 31, and June 30.

12.     Defendant David A. Flynn ("Flynn") co-founded Fusion-io with Rick White ("White"), and served as the Company's Chief Executive Officer ("CEO"), President, and Chairman of the Board of Directors, until his resignation on May 7, 2013.

13.     Defendant Shane V. Robison ("Robison") is, and was since May 7, 2013, Fusion-io's CEO, President, and Chairman of the Board of Directors.

14.     Defendant Dennis P. Wolf ("Wolf") is, and was at all relevant times, Fusion-io's Senior Vice President and CFO.

15.     Defendants Flynn, Robison, and Wolf are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Fusion-io, possessed the power and authority to control the contents of Fusion-io's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV.   BACKGROUND

16.     Founded in 2005 by Defendant Flynn and co-founder White, Fusion-io is a computer hardware and software systems company that designs and manufactures memory storage solutions using flash memory technology. Flash memory is a form of solid-state memory, meaning that it is a single, solid chip with no moving parts. Flash memory is also more compact than traditional hard drives, and, until recently, was primarily used for storing data on mobile devices and "flash drives."

17.     Fusion-io's integrated hardware and software solutions provide the Company's customers with the ability to utilize flash memory technology in large-scale data centers. The Company sells its products through a global direct sales force, original equipment manufacturers, and other channel partners. Since the Company's 2011 initial public offering, a few "strategic" customers, including Facebook and Apple, have accounted for a significant portion of Fusion-io's revenues. Indeed, Facebook and Apple each accounted for 36% and 24% of Fusion-io's revenue, respectively, in fiscal year 2011, and 30% and 25% the Company's revenue, respectively, in fiscal year 2012.

## V.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND OMISSIONS

18.     On August 9, 2012, after markets closed, Fusion-io issued a press release announcing its financial results for its fiscal fourth quarter and fiscal year ended June 30, 2012. In the press release, which was also filed with the SEC on Form 8-K, the Company reported annual revenue of $359 million with gross margin of 57.5%. The Company also announced that revenue growth for fiscal year 2013 would be in the range of 45 to 50%. In the press release, Defendant Flynn touted Fusion-io's "record revenue" and stated that the Company is "pleased with the momentum we have going into the next fiscal year."

19.     Later that same day, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Wolf explained that based on the Company's experience with its strategic customers, including Facebook and Apple, Fusion-io was able to anticipate the demand from those customers through fiscal 2013. Specifically, Wolf stated that "the strategic customers, we've had a couple years of experience with them now. So we have a better understanding of what their predictability will be going through fiscal 2013 now." Defendant Wolf added that the Company is able to anticipate revenues from its strategic customers, including Apple, stating that "we think we know where our Facebook and Apple revenue will be."

20.     During the conference call, Defendant Flynn also touted the strength of the Company's competitive position and emphasized that there are significant barriers to entry barring potential competitors from taking market share from Fusion-io. Specifically, to explain why firms could not easily compete with Fusion-io, Flynn stated that "it's really quite a hard problem to take these consumer grade . . . Flash chips and make them into an enterprise product that you can scale into thousands of servers."

21.     The announcement assured analysts that Fusion-io did not face any significant competition and that investors should not be concerned over commoditization of the Company's products. For example, after the conference call, William Blair published a report stating that "[m]anagement noted no significant competitive pressure. We expect these strong margin results to ease investor concerns over commoditization in the [flash memory] market."

22.     Following the announcement of Fusion-io's strong revenue and gross margin guidance and the assurances the Defendants provided on the conference call, the Company's stock soared nearly 28% to close at 26.86.

23.     On October 24, 2012, the Company issued a press release announcing its financial results for its fiscal first quarter ended September 30, 2012. In the press release, which was also filed with the SEC on Form 8-K, the Company reported quarterly revenue of $118 million with gross margin of 59.4%. In the press release, Defendant Flynn commented that the Company is "pleased with our execution in the first quarter and our ability to continue to capture market share." The Company also reiterated that its "[f]iscal [y]ear 2013 guidance remains unchanged."

24.     Later that same day, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Wolf emphasized that Fusion-io's revenue outlook remained in the range of 45% to 50% growth. Specifically, Wolf stated "[o]ur outlook remains – as we said on the call, it remains unchanged."

**THE TRUTH BEGINS TO EMERGE**

25.    On January 30, 2013, after the market closed, the Company issued a press release announcing its financial results for its fiscal second quarter ended December 31, 2012. In the press release, which was also filed with the SEC on Form 8-K, the Company reported quarterly revenue of $120.6 million with gross margin of 61.8%, which exceeded analysts' consensus expectations. However, the Company also surprised investors and announced that it no longer anticipated achieving its previously issued earnings guidance for the fiscal third quarter of 2013 and fiscal year 2013. Specifically, Fusion-io lowered its third quarter revenue guidance to $80 million, and its fiscal 2013 revenue guidance to "approximately $420 to $440 million," which represents revenue growth of about 17% to 22%—a far cry from the 45% to 50% growth the Company had previously told investors they could expect.

26.    Despite the disappointing guidance revision, the Company told investors that the change in guidance was due to a temporary shift in the timing of purchases from Fusion-io's strategic customers. Specifically, the press release stated that "the change in our guidance reflects a ***two-quarter shift*** in the timing of [Facebook's and Apple's] bulk purchases." (Emphasis added.)

27.    Later that same day, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Flynn assured investors that the revised guidance reflects only a temporary shift in purchases from two strategic customers, and not a systemic change in demand from Facebook or Apple. In particular, Flynn reiterated that "[t]he change in our guidance is a result of a shift in the timing of both purchases from our two key accounts, specifically for the next two quarters." Defendant Flynn also explained that the efficiency of the Company's products, and not competitive pressure, led to lower demand from its strategic customers. Specifically, Flynn touted that "[w]hen building out data centers and expanding

into new application areas, these customers have purchased in large volumes. They are now achieving greater efficiency thanks to our products, which has led to a shift in their near-term demands."

28.     Flynn also assured investors that the Company was confident that the sales to Facebook and Apple would return to previous levels following the two quarter shift. Specifically, Flynn stated that "we work with these customers very closely and have an understanding of what new applications are coming online and how they are scaling them." Flynn added that "this is really about the timing of when they put in new infrastructure, not whether or not Fusion-io is a key part of that infrastructure."

29.     Flynn also assured investors that the decline in demand from its strategic customers was not a result of an architectural shift away from Fusion-io's technology or competitive pressure. In particular, Flynn stated that "[w]e don't see any risk at this point from competition in these accounts in these architectures." Flynn summed up that "we are very confident that the uniqueness of our product and more importantly, the relationship with these customers means that when they decide to do their next step function in building new data centers are moving to new applications, that it will be with Fusion-io."

30.     Following the announcement of the disappointing guidance revision, when the market reopened on January 31, Fusion-io stock dropped from $20.09 per share to $17.48 per share, or 13%.

31.     On April 24, 2013, the Company issued a press release announcing its financial results for its fiscal third quarter ended March 31, 2013. In the press release, which was also filed with the SEC on Form 8-K, the Company reported quarterly revenue of $87.7 million with gross margin of 55.1%. The Company also reiterated its fiscal year 2013 revenue guidance.

32.     Following the Company's third quarter earnings announcement, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Flynn reiterated that the Company's relationship with its strategic customers remained strong and their demand for Fusion-io's products has not changed. Specifically,

Flynn stated that the Company's "relationship with Facebook and Apple is strong…we are a key part of their infrastructure and expect to grow as they grow."

33.     On May 8, 2013, Fusion-io made a shocking announcement that co-founders Flynn and White were leaving the Company. The Company also announced that Defendant Robison had been appointed as the Company's new CEO.

34.     Following the Company's announcement, on May 15, 2013, Defendant Robison represented the Company at the JPMorgan Global Technology, Media and Telecom Conference. During the conference, Robison emphasized that the Company's decision to replace Flynn as CEO was based on nothing more than Flynn's inexperience running a large, established company. Specifically, Robison insisted that "in the case of the founders, they have done a great job at the start-up level in taking the Company to where we are today but didn't have a lot of experience in running big companies. It is no more complicated than that." Robison also stated that Flynn and White would "stay on the Board and they are both going to be advisers to me as we move through the next 12, 18 months and maybe beyond that depending on their interest." A few weeks later, however, both Flynn and White resigned from the Company's Board of Directors.

35.     Following the announcement that Flynn and White were leaving the Company, Fusion-io stock dropped from $18.00 per share to $14.60 per share, or 18.9%.

36.     On August 7, 2013, the Company issued a press release announcing its financial results for its fiscal fourth quarter and fiscal year ended June 30, 2013. In the press release, which was also filed with the SEC on Form 8-K, the Company reported annual revenue of $432.4 million with gross margin of 58.9%. The Company also announced fiscal year 2014 revenue growth guidance of approximately 20%.

37.     Later that same day, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Wolf

emphasized that the Company still had opportunities to sell its products to its strategic customers, including Facebook and Apple. Specifically, Wolf stated that "there is opportunity at Apple and Facebook . . . as we had an established footprint because when their databases are growing, when their data footprint is growing, we actually are able to sell product as a maintenance on a quarterly basis."

38.     On October 23, 2013, Fusion-io revoked its prior 20% revenue growth guidance and announced that its expected gross margin in 2014 would decline and range from only 52% to 54%. The Company also announced that CFO Dennis Wolf and Chief Sales Officer James Dawson were leaving the Company.

39.     Despite Defendant's assurances that Facebook and Apple had only temporarily reduced their purchases of Fusion-io products, and would resume purchasing at their pre-January 30 levels, the Company finally revealed that these strategic customers were decreasing their purchases of Fusion-io's products. The announcement prompted analysts at William Blair to remark in their October 23 report that "Fusion faces serious and fundamental problems. It is evident that the company's two largest strategic customers [(Facebook and Apple)] are becoming less predictable purchasers and that they are apparently tapering off their investments in Fusion hardware." The report also stated that "Fusion [is] competing more on price as evidenced by management's significantly curtailed gross margin guidance . . . In other words, many of the concerns around increased competition, commoditization, and customer concentration have come to fruition."

40.     Analysts with JPMorgan were also surprised by the sudden decrease in gross margins, which, according to the analysts, could only mean that competitive pressures were stronger than the Company had indicated. Specifically, in their October 24 report, JPMorgan analysts commented that the "[c]ompetitive moat could be shrinking already. In our view, a key sign-post is gross margin and how it trends directionally."

41.   Following this disclosure, Fusion-io stock fell from $12.98 per share to $9.82 per share, or 24%.

42.   The aforementioned statements, which were made by Defendants during the Class Period, were false and misleading because Fusion-io's flash memory products had become increasingly commoditized, which allowed the Company's strategic customers to seek out lower cost alternatives from the Company's competitors.

43.   As a result of Defendants' false statements, Fusion-io common stock traded at artificially inflated levels during the Class Period. When Defendants revealed Fusion-io's true competitive pressure and its impact on the Company's business prospects, the price of Fusion-io common stock plummeted by about 70 percent from its Class Period high.

## VI.   LOSS CAUSATION

44.   During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Fusion-io common stock and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on January 30, 2013, May 8, 2013, and October 23, 2013, the price of Fusion-io common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Fusion-io common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VII.   CLASS ACTION ALLEGATIONS

45.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fusion-io securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fusion-io securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Fusion-io or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fusion-io;

- whether the Individual Defendants caused Fusion-io to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fusion-io securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

51. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fusion-io securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Fusion-io securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United*

*States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>COUNT I</u>
**(Against All Defendants For Violations of**
**<u>Section 10(b) And Rule 10b-5 Promulgated Thereunder)</u>**

54.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.      This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.      During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fusion-io securities; and (iii) cause Plaintiff and other members of the Class to purchase Fusion-io securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

57.      Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the

market for Fusion-io securities and options.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fusion-io' finances and business prospects.

58.   By virtue of their positions at Fusion-io, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.   Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.   In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.   Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.   As the senior managers and/or directors of Fusion-io, the Individual Defendants had knowledge of the details of Fusion-io' internal affairs.

60.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fusion-io.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fusion-io' businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fusion-io securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Fusion-io' business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Fusion-io securities at artificially inflated prices and relied upon the

price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

61.     During the Class Period, Fusion-io securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Fusion-io securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Fusion-io securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Fusion-io securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure of the alleged corrective disclosures.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, the Individual Defendants participated in the operation and management of Fusion-io, and conducted and participated, directly and indirectly, in the conduct of Fusion-io' business affairs.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fusion-io' financial condition and results of operations, and to correct promptly any public statements issued by Fusion-io which had become materially false or misleading.

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fusion-io disseminated in the marketplace during the Class Period concerning Fusion-io' financial prospects.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fusion-io to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Fusion-io within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fusion-io securities.

68.     Each of the Individual Defendants, therefore, acted as a controlling person of Fusion-io. By reason of their senior management positions and/or being directors of Fusion-io, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fusion-io to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Fusion-io and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fusion-io.

## VIII.   __PRAYER FOR RELIEF__

WHEREFORE, Plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## IX.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues.

DATED: November 26, 2013                    **GLANCY BINKOW & GOLDBERG LLP**

By:  *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: info@glancylaw.com

**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.  I, _MIKE MARRIOTT_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Fusion-IO, Inc. ("Fusion-IO" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Fusion-IO securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Fusion-IO securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Fusion-IO securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___*NOV. 26*__, *2013*_____
               (Date)

_____
               (Signature)

_ *MIKE   MARRIOTT* ___.
               (Type or Print Name)

**FUSION-IO INC (FIO)**                                    **Marriott, Mike**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 01/07/2013 | PUR | 300 | $20.9700 |
| 01/08/2013 | PUR | 300 | $19.7000 |
| 01/24/2013 | PUR | 100 | $20.7600 |
| 01/24/2013 | PUR | 100 | $20.7500 |
| 01/24/2013 | PUR | 100 | $20.5000 |
| 01/24/2013 | PUR | 300 | $20.0000 |
| 01/30/2013 | PUR | 200 | $18.9700 |
| 05/29/2013 | PUR | 1,000 | $13.5700 |
| 06/12/2013 | PUR | 1,000 | $13.9700 |
| 06/12/2013 | SLD | 1,000 | $14.5700 |
| 06/13/2013 | SLD | 1,000 | $13.9400 |
| 09/23/2013 | PUR | 200 | $13.9700 |
| 10/08/2013 | SLD | 200 | $14.5500 |

marriott